## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

                                              No. CR 99-685

ANDRES GARCIA,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Downward Departure, filed March 26, 2003 **[Doc. No. 216]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, ruled at the sentencing hearing that the motion would be **GRANTED**. The Court now sets forth the basis for its prior ruling in this Memorandum Opinion.

### BACKGROUND

**A.**    **Relevant Facts**

Defendant was originally sentenced on June 13, 2000. He has been incarcerated at the federal correctional facility in La Tuna for forty-six (46) months. During his incarceration, Defendant has made every rehabilitative effort possible. Defendant has taken advantage of every possible educational benefit offered to him. He graduated from fifteen adult continuing education courses ranging from technical drawing to constitutional law. He is enrolled in the Blackstone paralegal course and is on the waiting list for several programs offered through El Paso Community College, including the Commitment to Change, Cage Your Rage, Anger Management and Office Technology programs. In addition, he successfully completed the Bureau of Prisons Forty Hour Drug Program and the Bureau of Prisons Parenting Program.

While incarcerated, Defendant also has earned seventeen bible study diplomas through correspondence courses.

In addition, Defendant has taken advantage of the vocational skills training available at La Tuna. He spent 1,280 hours in an automotive vocational class offered through the El Paso Community College. Upon completion of the course, La Tuna Vehicular Reto-Fit Factory hired Defendant as a production clerk and trainer in the Research and Development department. Defendant's responsibilities include downloading data and specifications from SAP programs and training new employees to read schematics and install accessories on Border Patrol vehicles.

Defendant also has made efforts to share his own educational background and experience. He tutors other inmates in mathematics and English as a second language. In addition, he is a member of The Silent Partners Alcohol Anonymous Group at La Tuna, which provides an opportunity for him to share with younger inmates his own experiences with alcohol and the effect it has had on his life. Defendant is president of Alcohol Anonymous and an active member of Suicide Companion, Kairos and the Christian community at the prison. Moreover, Defendant is active in regular church activities, Make-a-Wish fundraisers and Christmas fundraising activities. Defendant sees his son regularly, writes to him and sends him financial support.

**B.     Procedural History**

On February 3, 2004, the Court granted Defendant's 28 U.S.C. §2255 motion for writ of habeas corpus and ordered that Defendant be resentenced. Defendant appeared before the Court for resentencing on April 7, 2004. During that hearing, the parties stated that there is no dispute that Defendant is eligible for the safety valve. Also during the hearing, Defendant's attorney raised the issue of a mitigating role reduction, which the Court stated was not warranted. During

the hearing, the fact that Defendant had filed a supplemental brief on resentencing, which essentially was a motion for downward departure, came to light. The Court vacated the hearing in order to give the government an opportunity to respond. On September 29, 2004, the Court resumed the sentencing hearing. At the hearing, the Court vacated and set aside the original sentence and resentenced Defendant based upon its findings. As set forth below, the Court granted a three-level downward departure based upon post-offense rehabilitation, reducing Defendant's offense level from thirty-three (33) to thirty (30).

## DISCUSSION

### A.    Downward Departure

Section 5K2.0 of the United States Sentencing Guidelines (the "Guidelines") provides the Court with the discretion to depart from the applicable sentencing range if "'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. §5K2.0 (quoting 18 U.S.C. §3553(b)). In the instant case, Defendant argued that a downward departure from the sentencing guidelines is warranted pursuant to Section 5K2.0 based upon post-offense rehabilitation. After consideration of the evidence, the Court concluded that Defendant's post-offense rehabilitation was present in this case to an exceptional degree and, accordingly, removes this case from the heartland of cases.

### 1.    Post-Offense Rehabilitation

The Court has the authority to consider post-offense rehabilitation as a basis for downward departure. *See United States v. Jones*, 158 F.3d 492, 503 (10th Cir. 1998) (citing

-3-

*Koon v. United States*, 518 U.S. 81, 94-96 (1996)). The Sentencing Guidelines, however, have taken post-offense rehabilitative efforts into consideration: one of the appropriate considerations in determining whether a defendant qualifies for the acceptance of responsibility adjustment is post-offense rehabilitation (U.S.S.G. §3E1.1). *See id.* When an encouraged factor has been taken into consideration by the Guidelines, it may serve as the basis for departure only when present to an "exceptional degree." *See id.* Thus, a defendant is not entitled to a downward departure based on post-offense rehabilitative efforts unless such efforts are so exceptional as to go beyond that contemplated by the acceptance of responsibility provision of the Guidelines. *See United States v. Benally*, 215 F.3d 1068, 1075-76 (10th Cir. 2000), *cert. denied*, 534 U.S. 1034 (2001). The fact-based assessment of whether a defendant's post-offense rehabilitative efforts are exceptional "falls squarely within the realm of the district court's 'special competence.'" *Id.*

Prior to the November 1, 2000 edition of the Guidelines, the Guidelines did not prohibit the Court, on resentencing, to consider post-offense rehabilitative efforts that occurred after the defendant's first sentencing. The instant offense occurred prior to November 2000 and, accordingly, the Court is not prohibited by the Guidelines from considering Defendant's post-sentencing rehabilitation. It is less clear, however, whether Tenth Circuit case law allows or prohibits the consideration of post-sentencing rehabilitation.

In *United States v. Warner*, 43 F.3d 1335, 1340 (10th Cir.), *cert. denied*, 510 U.S. 1126 (1994), the Tenth Circuit cited *United States v. Ortiz*, 25 F.3d 934, 935 (10th Cir. 1996), for the proposition that "*de novo* resentencing permits the receipt of any relevant evidence *the court could have heard at the first sentencing hearing.*" *Warner*, 43 F.3d at 1340 (emphasis in

original). Although acknowledging that "resentencing is to be conducted as a fresh procedure,"

the Tenth Circuit in *Warner* held:

> [T]he latitude permitted is circumscribed by those factors the court could have
> considered "at the first sentencing hearing." Thus, events arising after that time
> are not within resentencing reach. Having arrived at this conclusion, we believe it
> unnecessary to determine whether post-sentencing rehabilitative conduct is an
> insufficient ground for justifying downward departure.

*Id.*

     In an unpublished opinion, *United States v. De La Fuente-Ramos*, 242 F.3d 391, 2000

WL 1717186 (10th Cir. Nov. 16, 2000), *cert. denied*, 532 U.S. 936 (2001), the defendant argued

that he was entitled to a downward departure based on the fact that he had "undergone a series of

social, educational Christian instructive programs that have unequivocally enhanced his self

improvement" and that he had "dissociated himself from any nefarious activities and [did] not

have any affiliation with any criminal enterprise or persons." *Id.* at **9 (citing the defendant's

appellate brief). Relying on *Warner*, the Tenth Circuit held that, upon remand for resentencing,

it would be improper for the district court to depart based on the conduct of the defendant that

occurred after the original sentencing proceeding.

     In contrast, in *United States v. Roberts*, 166 F.3d 1222, 1999 WL 13073 (10th Cir. Jan.

14, 1999), another unpublished opinion, the Tenth Circuit agreed with the petitioner's argument

that the district court erred in concluding that it had no authority to consider his request for a

downward departure based on his post-conviction rehabilitative efforts. *Roberts* does not set

forth the underlying facts upon which the petitioner relied in arguing that his post-conviction

rehabilitation was extraordinary. *Roberts* does make clear, however, that in deciding that it did

not have the authority to depart downward, the district court stated that "'there's no authority for

granting a downward departure in this circuit for . . . rehabilitation . . . that take[s] place behind the [prison] walls.'" *Id.* at **4 (citing record of sentencing hearing). Other than this statement, there is no factual description of the petitioner's post-conviction rehabilitative efforts or when they occurred. The only logical conclusion to be drawn from the district court's statement, however, is that the petitioner's post-conviction rehabilitation must have been based upon the efforts that he made during his incarceration subsequent to his original sentencing. Based on this statement by the district court, the Tenth Circuit found: "Clearly, the district court felt that it lacked authority to grant a downward departure for post-conviction rehabilitation." *Id.* at **4. The Tenth Circuit held that the district court did in fact have discretion to depart downward and remanded the case for resentencing, explaining that, "because the Sentencing Guidelines nowhere forbid courts to depart downward on the basis of post-conviction rehabilitation, the district court incorrectly concluded that it had no authority to depart downward on that basis." *Id.* at **6.

In *United States v. Renteria*, 161 F. Supp.2d 1294 (D.N.M. 2001), relying in part on *Roberts*, United States District Judge James Parker found that he had the discretion to consider post-offense rehabilitation that occurred during the defendant's imprisonment after his original sentencing. The court explained:

> Mr. Renteria has demonstrated a significant change in his attitude and conduct for the better since serving the 15-month period of imprisonment in this case. Mr. Renteria served the two-year term of supervised release in an exemplary manner and strictly complied with all conditions that had been imposed. He obtained employment at New Mexico State University and has worked full-time in a good job. His supervisors rate his work as "excellent." His co-workers hold him in high regard. . . . Everything considered, it appears that Mr. Renteria has significantly changed his life for the better since being sent to prison for 15 months during 1996 and 1997. . . . [T]he court was convinced that Mr. Renteria's

-6-

post-conviction rehabilitation was genuine and very impressive and should be considered, along with other factors, as justification for a large downward departure.

*Id.* at 1302-03.

There is thus a lack of clear guidance as to whether the district court has discretion to consider post-offense rehabilitation that occurs "behind the prison walls." Using its own best judgment to interpret the precedent available in this Circuit, this Court concludes that it does have discretion to consider Defendant's motion for downward departure.

In the instant case, the Court is convinced that Defendant's post-offense rehabilitative efforts have been exceptional. While incarcerated, Defendant has made every effort to take advantage of the educational, vocational, outreach and volunteer opportunities available to him. As set forth above, he graduated from fifteen adult continuing education courses ranging from technical drawing to constitutional law. He is enrolled in the Blackstone paralegal course and is on the waiting list for several programs offered through El Paso Community College, including the Commitment to Change, Cage Your Rage, Anger Management and Office Technology programs. In addition, he successfully completed the Bureau of Prisons Forty Hour Drug Program and the Bureau of Prisons Parenting Program. While incarcerated, Defendant also has earned seventeen bible study diplomas through correspondence courses. In addition, Defendant spent 1,280 hours in an automotive vocational class offered through the El Paso Community College. Upon completion of the course, La Tuna Vehicular Reto-Fit Factory hired Defendant as a production clerk and trainer in the Research and Development department. Defendant's responsibilities include downloading data and specifications from SAP programs and training new employees to read schematics and install accessories on Border Patrol vehicles. Defendant

-7-

tutors other inmates in mathematics and English as a second language. He is a member of The Silent Partners Alcohol Anonymous Group at La Tuna, which provides an opportunity for him to share with younger inmates his own experiences with alcohol and the effect it has had on his life. Defendant is president of Alcohol Anonymous and an active member of Suicide Companion, Kairos and the Christian community at the prison. Moreover, Defendant is active in regular church activities, Make-a-Wish fundraisers and Christmas fundraising activities. Defendant sees his son regularly, writes to him and sends him financial support.

Defendant's family has seen a marked difference in his attitude and in his maturity. Defendant's caseworker at the Bureau of Prisons confirmed that Defendant's efforts have been truly extraordinary and that he has done over and above what most prisoners do. Indeed, at the sentencing hearing, the government stated on the record its belief that Defendant has made extraordinary post-offense rehabilitative efforts.

Many individuals who are released from custody and placed on supervised release never accomplish what Defendant has accomplished. In fact, despite all of our efforts during supervision, it is generally difficult to reintegrate defendants into their families and into society. Often, individuals serving time do little while in prison for the simple reason that they are not motivated. In contrast, Defendant's efforts during incarceration have been most impressive. Based on Defendant's efforts, the Court is convinced that when he is released, he will be a tremendous source of assistance to everyone in his family and in his community. Accordingly, the Court finds that the evidence abundantly establishes that Defendant's post-offense rehabilitative efforts have been extraordinary and warrant a downward departure.

2.    **Degree of Departure**

In addition to explaining the grounds for a downward departure, the Court must also "specifically articulate reasons for the degree of departure using any *reasonable methodology hitched to the Sentencing Guidelines*, including extrapolation from or analogy to the Guidelines." *United States v. Goldberg*, 295 F.3d 1133, 1138 (10th Cir. 2002) (citations omitted) (emphasis in original). In this case, the Court has contemplated the fact that post-offense rehabilitation is an encouraged factor that has been taken into consideration by the Guidelines. When an encouraged factor has been taken into consideration by the Guidelines, it may serve as the basis for departure when present to an exceptional degree. Therefore, in exceptional circumstances such as the case before the Court, the Guidelines clearly contemplate the permissibility of downward departures.

The Guidelines do not, however, specifically delineate the proper method for determining the degree of departure, but rather state that the "decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis." USSG § 5K2.0. The Tenth Circuit has required a sentencing court to extrapolate from or analogize to the Guidelines when determining the degree of departure without providing guidance as to how exactly this may be accomplished. *See Goldberg*, 295 F.3d at 1138. Moreover, a sentencing court may not justify a degree of departure "by referring to the resulting sentence rather than to an analogy to the Guidelines." *Id.* at 1140. Therefore, the Court cannot depart a certain number of levels to reach a specific sentence -- for example, to avoid incarceration.

The Court has seriously studied and considered the basic purposes of criminal punishment as articulated by the Guidelines. The Court has weighed the goals of just punishment, deterrence, rehabilitation and uniformity of sentences against the express

-9-

contemplation of sentences "outside the range established by the applicable guidelines, if the court finds that there exists [a] . . . mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." USSG § 5K2.0 (quotation marks omitted). Thus, the Court has considered Defendant in comparison with the many other defendants sentenced before the Court, and has determined that a three-level departure will incorporate the mitigating factors warranting a sentence below the guideline range, while properly maintaining the integrity of the basic purposes of criminal punishment. With a three-level departure, Defendant faces a sentence of ninety-seven (97) months, which the Court believes satisfies sufficiently the goals of punishment, deterrence and the protection of the public.

Moreover, the decision to sentence Defendant to an offense level of thirty (30) represents this Court's "attempt to predict the sentencing range the Sentencing Commission would have established if it had considered the circumstances." *See United States v. Cordova*, 337 F.3d 1246, 1249 (10th Cir. 2003). The Court is convinced that, if faced with a defendant whose post-offense rehabilitative efforts were as exceptional as those of Defendant herein, the Sentencing Commission would have set a guideline range of 97 to 121 months.

## CONCLUSION

At the sentencing hearing on September 28, 2004, the Court granted a three-level downward departure based upon post-offense rehabilitation. With a criminal history category I and an offense level of thirty (30), Defendant faced a guideline range of ninety-seven (97) to one hundred twenty-one (121) months. The Court imposed a sentence of ninety-seven (97) months.

-10-

**IT IS THEREFORE ORDERED** that Defendant's Motion for Downward Departure [Doc. No. 216] is **GRANTED**.


**DATED** this 21st day of October, 2004.




_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:
Kelly Burnham

Attorney for Defendant:
Mary Stillinger